## THE WARFIELD.

### (District Court, E. D. New York. January 24, 1903.)

1. MARITIME LIEN—VESSEL IN DRY DOCK.

Neither a dry dock, fitted into piers, to which it is held by cleats, so that it has only a vertical motion, nor a steamer therein for repairs, is a vessel in navigable waters, so as to give a maritime lien for a tort thereon.

Edward V. Slausen and John W. Ingram, for libelant.
Convers & Kirlin, for claimant.

THOMAS, District Judge. The libelant, whose employer was under contract to make repairs on the steamship Warfield, on a dry dock, fell through a hatch. For the injury thus received this action is brought. The dry dock, consisting of five sections connected by stringers, was fitted into piers, to which it was held by cleats, so that it had only a vertical motion. If the cleats were removed, the dry dock could be drawn out of position, and would float. This action in rem is based upon an alleged maritime lien upon the ship. But a tort committed on a ship on land does not give such lien. Hence the action must be sustained, if at all, on the theory, (1) that the dry dock was a vessel in navigable waters, or (2) that the ship was in navigable waters. The first alternative is negatived by Cope v. Vallette Dry Dock Co., 119 U. S. 625, 7 Sup. Ct. 336, 30 L. Ed. 501. Thus, the final question is, was the ship in navigable waters? In her position on the dry dock, she was not only out of commission and withdrawn from navigation, but also incapable of navigation. The ship could not be navigated on the dry dock, nor could the combined ship and dry dock be navigated in the water. Hence if the ship be eliminated from consideration, the injury on the dry dock was not on a vessel in navigable waters; or, if the ship be considered, she was not on navigable waters nor capable of navigation; or, if the combined ship and dry dock be considered, the whole was not a ship, nor capable of navigation. The piers pertained to the land, and the dry dock was adjusted to, and intended to be an attachment of, the piers. The fact that it rested on the water, rather than the water's bed, and rose and fell with the tide, did not make it a vessel, nor a part of the water. Its nature pertained not to water, but to land. To land it was attached, and of land it was intended to be a part. The pertinent decisions have been so often discussed by this and other courts that there is no occasion for reconsidering them. This precise question is thought not to have arisen, but the solution depends upon very obvious and fundamental rules relating to the admiralty jurisdiction.

The libel is dismissed, solely for want of jurisdiction.